IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH DUANE ARLINE, JR.,

        Plaintiff,                    No. 2:11-cv-3414 KJN P

      vs.

GOWER, et al.,                        ORDER AND

        Defendants.           FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the reasons stated herein, the undersigned recommends that defendants' motion be denied.

II.  Legal Standard for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

_____

[1]  Defendant Davey joined in the motion.  (Dkt. No. 28.)

1

1   court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>,

2   551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins</u>

3   <u>v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th

4   Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain

5   more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements

6   of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other

7   words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

8   statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a

9   claim upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at

10  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

11  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12  <u>Iqbal</u>, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be part of the complaint

13  for purposes of a motion to dismiss for failure to state a claim.  <u>Hal Roach Studios v. Richard</u>

14  <u>Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

15          A motion to dismiss for failure to state a claim should not be granted unless it

16  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

17  would entitle him to relief.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In general, pro

18  se pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

19  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

20  <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's

21  liberal interpretation of a pro se complaint may not supply essential elements of the claim that

22  were not pled.  <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

23          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

24  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

25  and matters properly subject to judicial notice."  <u>Outdoor Media Group, Inc. v. City of</u>

26  <u>Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

under the "incorporation by reference" doctrine, a court may also review documents "whose

contents are alleged in a complaint and whose authenticity no party questions, but which are not

physically attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

document, the defendant attaches the document to its motion to dismiss, and the parties do not

dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

contents of that document in the complaint." Id.

> In considering a Rule 12(b)(6) motion, a district court generally
> may not take into account material beyond the complaint.  Intri-
> Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052
> (9th Cir. 2007).  However, there are exceptions to the general rule.
> Under the "incorporation by reference" doctrine, we may consider
> "documents whose contents are alleged in a complaint and whose
> authenticity no party questions, but which are not physically
> attached to the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d
> 1068, 1076 (9th Cir. 2005) (alteration in original) (internal
> quotation marks omitted); see also Tellabs, Inc. v. Makor Issues &
> Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed.2d 179
> (2007) ("[C]ourts must consider the complaint in its entirety, as
> well as other sources courts ordinarily examine when ruling on
> Rule 12(b)(6) motions to dismiss, in particular, documents
> incorporated into the complaint by reference, and matters of which
> a court may take judicial notice.").

Dunn v. Castro, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010).

III.  Plaintiff's Claims

        This action is proceeding on the verified amended complaint filed June 28, 2011,

as to defendants Chief Deputy Warden R.L. Gower, Associate Warden D. Davey, Lt. D. Hitt, and

Sgt. G. Speers, all employed at High Desert State Prison ("HDSP").  (Dkt. No. 15.)  Plaintiff

alleges that he was confined to his cell approximately 24 hours per day, seven days per week, for

a period of 83 days, without outside exercise, during a modified program.  (Id. at 4.)  Plaintiff

alleges that he sought medical treatment for the injuries he sustained from the lack of exercise.

(Id. at 4-5.)

1    Plaintiff provided copies of his administrative appeals regarding his efforts to

2    obtain access to the concrete yard/mini yard to get exercise during the modified program.  (Id. at

3    9-18.)  Plaintiff alleges that defendants Davey improperly denied his administrative appeal

4    regarding the modified program, and defendants Gower, Hitt and Speers improperly approved the

5    denial of plaintiff's administrative appeals regarding the modified program.  (Id. at 5-7.)  Plaintiff

6    also alleges that each named defendant "approved and maintained the modified programming

7    knowing plaintiff would be deprived of outdoor exercise."  (Dkt. No. 15 at 5-7.)

8    In his declaration accompanying the operative complaint, plaintiff declares that

9    each defendant "possessed the authority to cease the deprivation of outdoor exercise due to the

10   imposed modified programming, after a substantial amount of time during the imposed modified

11   programming."  (Dkt. No. 17 at 2.)

12   This action proceeds on plaintiff's claim that the 83 day denial of outdoor exercise

13   violated his Eighth Amendment rights.  (Dkt. No. 18.)

14   IV.  Discussion

15   A.  Failure to Plead Causal Connection

16   In the amended complaint, plaintiff alleges that defendants Chief Deputy Warden

17   Gower and Associate Warden Davey, as top-ranking officials, "approved and maintained the

18   modified program knowing plaintiff would be deprived of outdoor exercise."  (Dkt. No. 5 at 5-6.)

19   Plaintiff alleges that defendants Hitt and Speers "as in position Lieutenant and Sergeant,"

20   respectively, "approved and maintained the modified programming knowing plaintiff would be

21   deprived of outdoor exercise."  (Dkt. No. 5 at 6-7.)  In the declaration accompanying the

22   operative complaint, plaintiff declares that each defendant had the authority to end the modified

23   programming.  (Dkt. No. 17 at 2.)

24   Defendants contend that these allegations are insufficient to plead a causal

25   connection between these defendants and the modified program because plaintiff failed to set

26   forth facts explaining how defendants approved such a program, how they maintained such a

4

1   program, or how they were otherwise involved in the modified program.  Defendants argue that

2   plaintiff's allegations are bare assertions of official involvement which are insufficient to

3   withstand a Rule 12(b)(6) motion.

4           In his verified opposition, plaintiff contends his allegations are sufficient to show

5   an actual connection or link to the modified program.  Plaintiff argues that he is only required to

6   provide a short and plain statement of the facts, and affirmatively states he can prove the facts in

7   support of his claim.  (Dkt. No. 26 at 3.)  Plaintiff avers that he "reasonably believes that"

8   defendants Gower and Davey "approved the enforcement of the imposed modified programming

9   which their subordinates maintained," and that defendants Hitt and Speers "personally

10  maintained the modified programming without taking any action towards providing plaintiff with

11  adequate outdoor exercise."  (Id. at 4.)

12          The Civil Rights Act under which this action was filed provides as follows:

13          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the

14          deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at

15          law, suit in equity, or other proper proceeding for redress.

16  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

17  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

18  Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend

19  § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

20  (no affirmative link between the incidents of police misconduct and the adoption of any plan or

21  policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

22  another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

23  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

24  legally required to do that causes the deprivation of which complaint is made."  Johnson v.

25  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

26  ////

1          Moreover, supervisory personnel are generally not liable under § 1983 for the

2     actions of their employees under a theory of respondeat superior and, therefore, when a named

3     defendant holds a supervisorial position, the causal link between him and the claimed

4     constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

5     (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.

6     Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where

7     there is no evidence of personal participation).  Vague and conclusory allegations concerning the

8     involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board

9     of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of

10    personal participation is insufficient).

11          Supervisors may only be held liable if they "participated in or directed the

12    violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d

13    1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).  Some

14    culpable action or inaction must be attributable to defendants and while the creation or

15    enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy

16    must have been the moving force behind the violation.  Starr, 652 F.3d at 1205.

17          Because defendants were Chief Deputy Warden and Associate Warden at the time

18    of the modified program, which apparently affected all general population Black inmates,

19    plaintiff's allegations that they were responsible for approving, maintaining, or enforcing the

20    modified program are not facially implausible.[2]  See Twombly, 550 U.S. at 570 (a claim upon

21    which the court can grant relief must have facial plausibility).  While the roles of defendants Hitt

22    and Speers may be more attenuated, plaintiff declares he can produce evidence to support his

23    allegations, and that he reasonably believes that defendants Hitt and Speers maintained the

24    _____

25          [2]  Although it was not defendants' burden, if these named defendants had no connection
      to the modified program, defendants could have filed documentary evidence demonstrating a
26    lack of connection if such existed.  See Dunn, 621 F.3d at 1205 n.6.  Neither party submitted a
      copy of the order placing HDSP on modified program.

1  modified program.  Plaintiff also declares that each defendant had the authority to end the

2  modified programming.  As such, plaintiff's allegations are not facially implausible.

3       All of these allegations, taken together, are sufficient to state an Eighth

4  Amendment violation.  On a motion to dismiss, the court is required to take plaintiff's allegations

5  as true.  Accordingly, the undersigned finds that plaintiff has adequately pled a causal connection

6  between defendants and the modified program, and defendants' motion to dismiss should be

7  denied.

8       B.  Eighth Amendment Exercise Claim

9       Defendants contend that plaintiff's Eighth Amendment claim should be dismissed

10  because the modified program was imposed for the safety and security of the institution, and

11  concluded within a reasonable time.

12       The Eighth Amendment prohibits the infliction of "cruel and unusual

13  punishments."  U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain"

14  constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley

15  v. Albers, 475 U.S. 312, 319 (1986).  Neither accident nor negligence constitutes cruel and

16  unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith,

17  that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

18  Whitley, 475 U.S. at 319.  What is needed to show unnecessary and wanton infliction of pain

19  "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian,

20  503 U.S.1, 5 (1992) (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment

21  claim, the plaintiff must show, objectively, that he suffered a "sufficiently serious" deprivation.

22  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

23  The plaintiff must also show that each defendant had, subjectively, a culpable state of mind in

24  causing or allowing plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

25       Outdoor exercise is a basic human need protected by the Eighth Amendment, and

26  the denial of outdoor exercise may violate the Constitution, depending on the circumstances.

1    Richardson v. Runnels, 594 F.3d 666 (9th Cir. 2010); Norwood v. Vance, 591 F.3d 1062, 1070

2    (9th Cir. 2010).  While the "temporary denial of outdoor exercise with no medical effects is not a

3    substantial deprivation," Norwood, 591 F.3d at 1070 (internal quotation and citation omitted),

4    when an inmate alleges the denial of constitutionally adequate outdoor exercise, the inquiry is

5    fact specific and thus requires full consideration of the context in which the denial occurred

6    based on a fully developed record.  Richardson, 594 F.3d at 672; Norwood, 591 F.3d at 1068-70.

7    "[W]hen balancing the obligation to provide for inmate and staff safety against the duty to accord

8    inmates the rights and privileges to which they are entitled, prison officials are afforded

9    'wide-ranging deference.'"  Norwood, 591 F.3d at 1069 (quoting Bell v. Wolfish, 441 U.S. 520,

10   547 (1979).

11          In the operative complaint, plaintiff alleges that defendants deprived him of

12   outdoor exercise for a period of 83 days, subjecting him to injury for which he sought medical

13   treatment, despite the availability of a separate concrete yard that plaintiff alleges could safely be

14   used for exercise during the modified program.  In administrative appeals appended to the

15   complaint, Chief Deputy Warden Gower responded to plaintiff's claim that the lockdown was the

16   result of an isolated incident:

17              on February 19, 2011, a Black inmate attempted to murder a
                correctional officer on Facility C, by stabbing him repeatedly with
18              an inmate manufactured weapon.  The correctional officer
                sustained life threatening injuries.  As a result, the Black inmate
19              population was placed on a modified program, in order to conduct
                the necessary interviews of that population in an effort to identify
20              any further plans to assault correctional staff.  The modified
                program was also necessary to allow staff to complete searches of
21              the entire facility in an effort to locate any additional inmate
                manufactured weapons or weapon stock materials.  These steps
22              were necessary to ensure the safety of staff, inmates and the
                security of the institution.  On May 18, 2011,[3] these steps were
23              completed and . . . [the] Black population was then released from
                the modified program and returned to normal program. . . .

24

25   _____

26          [3]  Although plaintiff alleges the modified program was lifted on May 13, 2011, defendant
     Gower wrote that the modified program was returned to normal program on May 18, 2011.

1  (Dkt. No. 15 at 16.)  Defendants contend that this demonstrates that the modified program was

2  implemented and maintained with the goal to protect the safety and security of correctional staff.

3  Defendants argue that because defendants' obligation to maintain order and protect inmates and

4  institutional security takes precedence over the prison's outdoor exercise program, the modified

5  program was reasonable, terminated as soon as safe and practicable, and did not violate

6  plaintiff's Eighth Amendment rights.  Defendants rely on Norwood and Noble v. Adams, 646

7  F.3d 1138 (9th Cir. 2011), to support their position that the temporary denial of outdoor exercise

8  in the furtherance of prison security does not categorically amount to an Eighth Amendment

9  violation.

10            In his verified opposition, plaintiff argues that it is inappropriate to resolve this

11  issue at the pleading stage because resolution of this case turns on specific issues of fact.  (Dkt.

12  No. 26 at 5.)  Plaintiff concedes that the modified program was the result of a safety response,

13  but argues that the deprivation of outdoor exercise was unreasonable, and that the modified

14  program was not imposed under a genuine emergency.  (Dkt. No. 26 at 5.)  In addition, given the

15  availability of the secured concrete yard, plaintiff contends that the prolonged deprivation of

16  outdoor exercise was not reasonable under the circumstances.  Plaintiff declares that he received

17  medical treatment for lower back injuries and migraines he sustained during the deprivation.  (Id.

18  at 9.)

19            The Ninth Circuit has clearly established that a deprivation of exercise may

20  constitute an Eighth Amendment violation.  Richardson, 594 F.3d at 672; Hearns v. Terhune, 413

21  F.3d 1036, 1042 (9th Cir. 2005).[4]

22  _____

23        [4]  As the Ninth Circuit noted in Hearns:

24        "[E]xercise has been determined to be one of the basic human necessities
          protected by the Eighth Amendment," LeMaire v. Maass, 12 F.3d 1444, 1457 (9th
          Cir. 1993), and a long-term deprivation of outdoor exercise for inmates is

25        unconstitutional, see id. at 1458 ("[T]his circuit has determined the long-term
          denial of outside exercise is unconstitutional.") (emphasis in original).  See also

26        Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) ("There is substantial

An extended ban on outdoor exercise, after resolution of the exigent

circumstances that warranted an initial lockdown, may support an inference that prison officials

deliberately and knowingly refused to meet a plaintiff's basic exercise needs.  See Johnson v.

Lewis, 217 F.3d 726, 733-34 (9th Cir. 2000) (noting heightened judicial deference accorded to

prison officials during emergency circumstances, as set forth in Whitley v. Albers, 475 U.S. 312

(1986), as compared to more routine challenges to conditions of confinement, governed by the

_____

> agreement among the cases in this area that some form of regular outdoor exercise
> is extremely important to the psychological and physical well being of the
> inmates."); Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th Cir. 1984) (holding
> that the district court did not err in concluding that the denial of outdoor exercise
> to inmates assigned to administrative segregation for over one year raised
> "substantial constitutional question").

Hearns, 413 F.3d at 1042.

> More recently, another magistrate judge recounted:
>
> Inmates have a constitutional right to exercise and the denial of out-of-cell
> exercise for an extended period of time is sufficiently serious to state a claim
> under the Eighth Amendment.  Thomas [v. Ponder], 611 F.3d [1144] at 1151-52
> [(9th Cir. 2010)].  No bright line exists in terms of how many hours of out-of-cell
> exercise per week satisfy the Constitution.  Noble v. Adams, 646 F.3d 1138,
> 1139-41 (9th Cir. 2011) (no outdoor exercise or other privileges for approximately
> sixteen months); Hebbe v. Pliler, 627 F.3d 338, 343-44 (9th Cir. 2010) (inmate
> permitted out of his cell for only eight hours a week and impermissibly required to
> choose between exercise and law library access during those hours); Thomas, 611
> F.3d at 1151–52 (no out-of-cell exercise for thirteen months); Pierce v. County of
> Orange, 526 F.3d 1190, 1211–13 (9th Cir. 2008) (at least two days a week for at
> least two hours total per week sufficient exercise); LeMaire [v. Maass], 12 F.3d
> [1444] at 1457–58 [(9th Cir. 1993)] (no out-of-cell exercise for most of a
> five-year period); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (in-cell
> confinement for almost twenty-four hours a day and forty-five minutes of outside
> exercise per week for a six-week period); Spain v. Procunier, 600 F.2d 189, 199
> (9th Cir. 1979) (fewer than five hours of exercise per week and no outdoor
> exercise for some inmates over a period of years).  Short-term, temporary
> deprivations of exercise without medical effects are not sufficiently serious to
> support an Eighth Amendment claim, Thomas, 611 F.3d at 1155; Norwood
> [v.Vance], 591 F.3d 1062, 1070 (9th Cir.2010); May v. Baldwin, 109 F.3d 557,
> 565 (9th Cir.1997); Allen, 48 F.3d at 1088, but the deprivation of exercise for a
> period of six weeks can support a claim, Allen, 48 F.3d at 1088.

McKinney v. California Dept. of Corrections and Rehabilitation, 2012 WL 1909365, *8  (E.D.
Cal. 2012).

1   standard set forth in Wilson v. Seiter, 501 U.S. at 294).

2          Moreover, in Norwood, prison officials were in the midst of a particularly violent

3   period in the prison's history, and were addressing gang activity, serious inmate assaults, and

4   numerous inmate-on-inmate assaults during the two year period of lockdowns.  Id., 591 F.3d at

5   1065.  In Noble, prison officials instituted a lockdown following a "particularly violent armed

6   riot" which was started by a gang member, and which "was unusual because of the normally

7   antagonistic gangs acting together."  Id. at 526.  Here, the pleadings reflect that prison officials

8   responded to a single instance of an inmate attacking a correctional officer, as opposed to a riot

9   or multiple assaults.

10          For these reasons, facts related to the duration, impact, and rationale for the

11   modified program are matters that must be addressed on a fully developed record.  Richardson,

12   594 F.3d at 672 ("claims involving a prisoner's right to exercise require a full consideration of

13   context, and thus a fully developed record").[5]  Therefore, defendants' motion to dismiss

14   plaintiff's Eighth Amendment claim should be denied.

15                  3. Qualified Immunity

16          Additionally, because a prisoner's right to outdoor exercise is firmly established,

17   defendants' alternative qualified immunity defense fails.  Although the defense may prevail on a

18   motion for summary judgment, see e.g. Noble, 646 F.3d at 1142-48 (9th Cir. 2011) (on appeal

19   from summary judgment, granted defendant prison officials' qualified immunity defense to

20   plaintiff's Eighth Amendment denial-of-outdoor-exercise claim attendant to a prison lockdown),

21   and Norwood, 591 F.3d at 1069 (same), the assessment of the constitutionality of denying

22

23          [5]  Plaintiff pursued similar Eighth Amendment outdoor exercise claims in Arline v. Clark,
     Case No. 1:07-cv-1097 LJO GSA (E.D. Cal.), based on two modified programs, one lasting 38
24   days, and another lasting 56 days, while plaintiff was incarcerated in Corcoran.  On February 4,
     2010, the court recommended that the motion to dismiss plaintiff's Eighth Amendment outdoor
25   exercise claims be granted, and that defendant should be granted qualified immunity.  Id., Dkt.
     No. 37.  However, the district court rejected the recommendations, finding it was inappropriate to
26   resolve these issues at the pleading stage.  Arline v. Clark, 2010 WL 1267298 (E.D. Cal. March
     31, 2010).

1  outdoor exercise pursuant to a given lockdown or modified program is too fact-dependent to

2  resolve on a motion to dismiss.  See e.g. Norwood, 591 F.3d at 1068 ("the qualified immunity

3  inquiry is highly context-sensitive, turning on whether it would be clear to a reasonable officer

4  that denying outdoor exercise was unlawful "in the situation he confronted") (quoting Saucier,

5  533 U.S. at 202).  In the absence of a fully developed record, qualified immunity does not apply

6  where the facts, construed in the light most favorable to the party asserting the injury, show a

7  violation of a clearly established constitutional right of which a reasonable official should be

8  aware.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

9  V.  Conclusion

10         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to

11  assign a district judge to this case; and

12         For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

13         1.  Defendants' motion to dismiss (dkt. no. 24) should be denied; and

14         2.  Within fourteen days from any district court's order adopting these findings

15  and recommendations, defendants shall file an answer.

16         These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

18  days after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

21  objections shall be filed and served within fourteen days after service of the objections.  The

22  parties are advised that failure to file objections within the specified time may waive the right to

23  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24  DATED:  January 29, 2013

25                                          KENDALL J. NEWMAN
                                            UNITED STATES MAGISTRATE JUDGE

26  arli3414.mtd